The next case on the calendar is Doe v. Sessions. Good morning, Your Honors. My name is Whitney Elliott of the Legal Aid Society here for the petitioner in this case. This case involves a removability issue and also a relief issue. I was going to start with the removability issue. And that issue is whether Congress, with the statute at issue here, has set up a regime in which a noncitizen's removability and permanent ineligibility to reenter the United States could result from a drug conviction encompassing conduct that is no longer a federal crime at all. We think that all the relevant statutory text here and all the relevant principles of statutory interpretation suggest that the answer to that question is no. The inquiry is not whether a conviction necessarily qualifies as a felony under the CSA at some prior time. Instead, the inquiry is whether the conviction necessarily qualifies, in the words the Supreme Court used in Moncrief, necessarily prescribes conduct that is an offense under the CSA. Now, the inquiry we're into here is a result of the categorical approach I understand. But your client, it was a crime both at the time of conviction and at the time removal proceedings commenced. He was convicted of a heroin offense. Am I understanding the record correctly? I guess what I would say to that, Your Honor, is that the conviction did qualify as a felony under the CSA at the time of the conviction and at the time of the initiation of proceedings. So the reason we're puzzling over this is about the categorical approach and the effect of the removal of Nax... You can help me with the pronunciation, I'm hoping. No oxygel, Your Honor. All right. From schedule two after his conviction. That's correct, Your Honor. Proceed. So the parties agree here that under the categorical approach, my client's conviction... Doesn't it make sense to look at whether the conduct is criminal at the time of conviction, at the time that it was done? Well... Because we're concerned about the person's state of mind, culpability, so logically doesn't it make sense to look at what the state of the law was really when the conduct was convicted, what was committed closer to the time of conviction? I disagree with that, Your Honor. I think when removal proceedings are ongoing and someone is impending removal proceedings, the relevant inquiry should be, does the conviction qualify as a felony under the CSA at the time of removal proceedings, not at some prior time in the possibly distant past? Well, if it were the opposite and a drug were added to the schedule and then suddenly it is a crime, you wouldn't hold that against the individual, right? That, Your Honor, I think presents a different kind of question. So I think if I were arguing that case, I would probably take the position that no, it does not. And the reason that case is different from this case is, in that kind of case, you would have a new law imposing new legal consequences on a past conviction in a way that harms to the detriment of the individual. That kind of circumstance would have a retroactive effect, it would trigger the presumption against retroactivity, and the question then would be, is there a clear enough statement under the cases like Landgraf and St. Cyr? And so how do you deal with Section 109, which sort of does the opposite of the ex post facto? So I guess a few things about that, Your Honor. I think 109 by its terms talks about the repeal of any statute. I don't think what we have here is not the repeal of any statute, so I just think by its terms that's not applicable here. And 109 also is talking about penalties that are imposed as a result of such a violation, which it's not clear to me that removal from the United States under the Immigration Act is. In other words, this isn't a sentence that goes with a crime that somebody committed. Section 109 speaks to the situation where somebody commits a crime, does something that's against the law when he does it. Then the law is repealed, and the question is, can he still be prosecuted and sentenced for what he did before? But that seems to me a rather different question than the immigration consequences of that. I totally agree with that, Your Honor, and I think it's certainly a live question whether Section 109 would ever apply. And I thought— I'm sorry. So even apart from the issue of repeal, it's your argument that 109 is inapplicable because this is not a liability that's incurred under the statute of conviction? I think— And it refers to both penalties and liabilities. This liability would seem, at least potentially, the more applicable language to me, but there's maybe an argument, and perhaps a substantial one, that this is not a liability incurred under the statute of conviction. It's a liability incurred under the immigration laws. I think I agree with—I think we would take the position, if there were a repeal of a statute here, which of course we don't have, that it just doesn't apply to removal proceedings at all. Yes. The statute does speak in terms of a person becoming removable when he is convicted of a crime. So in terms of the language, when does someone convicted of a controlled substance offense become removable? Well, I think in a case like this, my client could have become removable at the time of his conviction encompassed conduct that necessarily qualified as a felony under the CSA. It necessarily encompassed a substance that was at that time a Section 802. So when he commits his crime—well, when he's convicted of the crime in the first place, he's removable as of that date under the statute. So what in the statute tells us that that status changes at some later point so that he's no longer removable? I don't think it's necessarily a question of that status changing, Your Honor. I think it's what the immigration judge is looking at. He's asking a question. The immigration judge is asking, is this person removable now? Has he been convicted of an offense? And the answer might be, yes, he is, because as of the moment that he incurred this conviction, he became removable. And nothing in the statute says he's no longer removable, so he's removable. Well, I guess I disagree with that, Your Honor. I think quite a few things in the statute say that, because the immigration judge is asking, does this conviction encompass a controlled substance in Section 802, not a substance that was a 802 substance at some prior time? Yes, but that reference point is to when someone becomes removable. You become removable. You are removable when you are convicted, right, of a crime that is a controlled substance offense as defined in 802, and as of that date, that's exactly what your client had done and what had happened to him. He'd been convicted of a crime that you acknowledge was a crime under Section 802. Now he's removable. Even at the later point, the judge is asking, is he removable? And the question is, well, he was convicted of such an offense, and that made him removable. Now he's removable. And what's wrong with that logic? Well, I think it's just a few things, Your Honor. I think, number one, I think it's just not supported by the statutory text. Again, the immigration judge is applying this language after a conviction has become final, and the language is a controlled substance as defined in Section 802. I mean, I see your point as a policy matter. If we put aside the complications, the curveballs thrown by the categorical approach, suppose he actually had been convicted of distributing Naloxone, which now we think is sort of a good thing because it has healthy consequences for people who are opioid addicts. And so we changed our minds about whether it's a good thing or a bad thing. Under the government's logic, too bad for him because we didn't think that at the time he committed his crime. And I can see the logic of the argument that as a policy matter, we're not deporting people because they defied the law, because lots of crimes that people commit that are equally defiance of the law don't make you removable. It's whether we think you're somebody who, because of what you did, should be removed. And today, at least my hypothetical Naloxone seller, is not someone who's done anything that we're concerned about anymore. So it would seem odd. I mean, suppose we legalized marijuana, it would be odd if the consequence of that was, but anybody who was convicted of distributing marijuana back when that was a crime is now going to be removed because what a menace marijuana dealers are. That would seem a very strange policy, but I'm not sure that I follow your linguistic argument. Well, I agree with those consequences, and I'll just make a few points. Again, there's really no argument about the text from the other side or from the BIA. They're not getting this rule anywhere from the statutory text. They haven't pointed to any statutory text. There's no board precedent interpreting this text to get to that rule. All the relevant language from 1101A43B, I think, as we put forth in our brief, is most likely to be judged at section 802 now and at section 924C now, and what is necessarily punishable as a felony under the CSA now. There's no backward working language anywhere in that definition. They have to read in it at the time of conviction, sort of, that that kind of phrase is implied. We don't think that's the most reasonable or even a reasonable reading of the language. Thank you. Good morning. May it please the Court, this is Dani Camilleri for the Attorney General. In this case, the only question is whether Doe was convicted of a felony under the Controlled Substance Act. The answer to that question is yes. The statutory argument that opposing counsel makes, even in his brief, he has to insert a word to actually make his statutory plain language argument work. We also then have a wall of precedent from the board, this Court, and the Supreme Court, all doing the analysis at the time of conviction. In any of those cases, did the immigrant in question raise the argument that it should have been done differently? I'm not sure. Well, I mean, your wall of precedent amounts to when, for one reason or another, nobody raised this issue, it was assumed that it would go a certain way, and so the courts did it that way. If you can't tell me that there was an adjudication by a court that the petitioner's argument here is wrong because that same argument was raised and rejected, I think you've got a wall with a lot of holes in it. Maybe you could address your first argument, that you have to insert a word into the statutory interpretation that your adversary is doing in order to make it work. He does that in his brief. What word? Can you remind me? I would have to look back at the brief. I believe it was currently. The word like now, right? Yeah, currently. And if you have to do that, then you've basically conceded the point that the plain language is not in your favor. I don't know. Don't you have to—he says you have to insert the word at that time because there is some ambiguity. Isn't that the point? He's raising the temporal issue in order to obscure the fact that he was convicted of this felony. If I may just go back to your point, in Gauss, which he cites as favorable, but actually this court made a very, in its analysis, made sure that it got the time of conviction correct because there had been a change in the drug schedules two weeks of that conviction. And that was part of the analysis. So maybe it hasn't been raised. This is, I would concede, a novel argument. But certainly there have been cases where there are published decisions where there would have been a different outcome if you had not looked at the time of conviction. And courts have looked to that because, I mean, frankly, that's what makes sense. You have a fixed point in time versus this future point whenever removal proceedings are commenced, which can also last many years, instead of at the time of the offense. This was a felony. I don't, there's no debate about that, that this was under the Controlled Substance Act. Typically when we're doing categorical approaches, the state statute to the CSA, we don't have that problem. Well, but we have a similar problem. The reason we have that problem when it's, it's uncommon to have the problem when it's the federal statute. Under the state statutes, the question is, they have different drugs, so what do we do with that? And that comes up frequently. It's not that common that we're dealing with, the federal statute actually has different times. Well, I believe that the CSA schedules have changed 160 times since it was enacted in the 1970s, so it does happen quite frequently throughout the year. So the equitable appeal of the government's position is really about the categorical effect. This is a somewhat artificial argument as applied to this defendant, because everyone knows he's convicted of heroin, and indeed, if the statute were severable, there's, it seems to me, you've got the judgment, which is a Shepard document that would allow us to say he's convicted of heroin. So we've got this, that's what's really problematic. But we do have the categorical approach, and you agree, and you argue that, or you agree that the categorical approach rather than the modified categorical approach is appropriate here. Well, the board did not adopt the IJ's modified approach. That was our futility argument, that even if you remand, we know he's removable. But is this an appropriate case for the modified categorical approach under, given that the conviction is a B1C conviction, which does not depend on what drug it is? It's not an element of B1C what drug it is. It's an element of B1A and B1B, because they have enhanced . . . But it's also B1B, if I recall correctly, and it is on the judgment that it was heroin, and that is required by the schedules. I did kind of a deep dive into the CSA last week, but he was convicted under B1C, B1B . . . Well, how deep was your dive if you don't know that he was convicted of a B1C offense? It was B1C and also B1B. He pled guilty to B1B? He was . . . I believe so. There are multiple judgments in the . . . Mm-hmm. But just going back to the . . . Let me go back to the . . . If hypothetically he had been convicted of distributing naloxagol, you would be taking the same position, right? That the fact that this drug has been legalized since doesn't matter because he was convicted of a controlled substance offense back in the day when that was illegal, right? That's the government's position. That's correct. I don't know what it would take to get a felony conviction on that substance. That's the other thing. If he'd been convicted of a misdemeanor, this would also be . . . it would not be an aggravated felony. So I don't even know if under the statute that's possible to have a felony conviction for naloxagol. I'm just not as familiar with that substance. But yes, we think that from a policy, statutory, and as I said, we do believe that there's precedent, especially with Ferrera . . . I guess that also makes it not such a deep dive if you don't know the answer to that question. Which question? The question of how much naloxagol you would need to have a felony conviction. It's not currently in the drug schedules of the . . . It's not there at all. Well, it would have needed, right? Because what you're interested in is what the statute said back at the time when Mr. Mendo was convicted. At the time he was convicted, under the CSA, if we move the temporal argument, there's no real dispute here. It's a felony. It was a felony then. And we feel that the temporal argument is just an attempt to obscure what is a clearly removable conviction. This is a removable offense, even with the categorical approach, because you look to the time of conviction. Could I ask a question about the cat relief? It's always hard distinguishing between a question of weighing the evidence and what we've said, which is almost a kind of insufficiency standard that if the immigration judge disregards clear evidence, then that can be an error of law. That's the standard that we're applying. Why isn't it such an error that the immigration judge does not address that the government itself in its 5K1 submission in the criminal case stated to the court that one reason Mr. Doe deserved a break on his sentencing was that he was in a particularly dangerous situation since all of his co-defendants knew that he had been the cooperator because that information was disclosed in the criminal complaint? How can we blithely say that, well, it's just a matter of weighing the evidence, and so the immigration judge can be affirmed, well, we have no jurisdiction to review that factual determination, that they didn't know? He testified that only one of his co-defendants knew, so I still think that that is a factual finding of the immigration judge that he didn't demonstrate. We should believe what he said that is somewhat ambiguous rather than what the government of the United States represented to a federal judge at the time of sentencing. That's a rational thing for an immigration judge. I think that was a factual determination that the immigration judge made based on the evidence before, and it was a very thorough decision in terms of summarizing the expert reports and the testimony that was provided. But did the immigration judge totally overlook what was in the government's letter? I don't believe so, Your Honor, and I don't think the board did either in this case. I think that all the evidence is that we have . . . There's no mention of the letter, and don't you believe that that would be an important fact that it was in the government's letter? The agency is not obliged to list every piece of evidence before it, and I believe the exact language is the exegesis language. Again, I really feel this was a very thorough decision at just taking them together, and there was other evidence in the record that not every co-defendant knew. If there are no more questions, thank you very much. Thank you. Just a few quick points in rebuttal, Your Honor. Judge Lynch, in respect to your point, I would point the court to page 836 in the record. That's where my client's plea agreement begins, and that's where it clarifies that he pleaded guilty to 841B1C. Could you address the IJ and the BIA's failure to reference the prosecutor's letter? Yes, Your Honor. So Ortiz-Franco says, of course, distinguishes between errors of law and errors of fact, and it talks about how ignoring or mischaracterizing evidence can qualify as an error of law subject to this court's review. I guess what I would say about that is, in the immigration judge's analysis, the judge found it very, very relevant about whether the co-defendants had knowledge, and I think that was probably the principal premise of his decision to find that we hadn't met our burden of proof. Obviously, I think we think that letter squarely contradicts that finding. Of course, and the relief that you would get from that is a remand to the board, where the board would have to address the immigration judge's finding that you also hadn't established the likely acquiescence of the Dominican authorities in whatever might happen to him at the hands of his co-defendants, right? I think that's right, because the board didn't reach that issue. The big issue here . . . of course, you want that, and if you're entitled to it, you'll get it, but the big issue here is the removability, because from the . . . again, just so that I understand what the consequences of the decision are, if you win on removability, Mr. Doe gets to stay in the United States, period, end of story, we're done. That's exactly right. Whereas, if you win on the other thing, you've got another battle to fight in the BIA, even as to whether cat relief is available, which is a lesser form of relief than not being removable. That's exactly right, Your Honor. Thank you very much. Thank you both.